Arthur J. Collins Estate, Inc. v. Commissioner.
Arthur J. Collins Estate v. Comm'r
Docket No. 106691. United States Tax Court
1942 Tax Ct. Memo LEXIS 50; 1 T.C.M. (CCH) 202; T.C.M. (RIA) 42640; December 10, 1942
*50 George W. Witney, Esq., 2004 Finance Bldg., Philadelphia, Pa., for the petitioner. Ribert S. Garnett, Esq., for the respondent. ELLIOT Memorandum Opinion ELLIOT, J.: Respondent determined a deficiency in the income tax of petitioner for the year 1936 in the amount of $4,483.53. The sole issue is whether petitioner is entitled to a larger credit under section 26 (c) (2) of the Revenue Act of 1936 than was allowed by the respondent. The facts are found to be as stipulated. [The Facts] Petitioner, a personal holding company with principal office at Moorestown, New Jersey, filed its income and excess-profits tax return for the year 1936 with the Collector of Internal Revenue for the First District of New Jersey. Petitioner was formed under the laws of New Jersey on May 24, 1930, as the result of an agreement dated April 30, 1930, between Emily Coles Collins, widow of Arthur J. Collins, and her three adult children. The preamble of the agreement is as follows: WHEREAS said party of the first part is the residuary beneficiary under the will of Arthur J. Collins, who died on April 22, 1930; and whereas the estate of Arthur J. Collins is secondarily liable on all or most of the *51 obligations of Arthur J. Collins & Sons, Inc., a New Jersey corporation, in the amount of approximately $140,000, and is primarily liable for the obligations of the said Arthur J. Collins personally, approximating $40,000, in addition to the obligations of the said Arthur J. Collins personally, approximating $40,000, in addition to the obligations of the estate to pay the inheritance taxes to the State of New Jersey and the Unitedstates of America; and whereas all of the parties hereto are stockholders and directors of said Arthur J. Collins & Sons, Inc., and as such are desirous of continuing the business of said corporation as it was conducted during the lifetime of said Arthur J. Collins; now, therefore, in consideration of the sum of $1.00 and other good and valuable consideration, paid by each party hereto to the other, receipt of which is hereby agreement and assignment witnesseth: The agreement provided that the widow should transfer and assign to her children 468 out of 568 shares of the stock of Miami Beach Improvement Company, which she owned, personally, and also all of her right, title and interest in her husband's estate with the exception of 428 shares of the capital *52 stock of Arthur J. Collins & Sons, Inc., which were to be converted into $42,800 of Preferred Stock of the new corporation (petitioner). In a separate agreement, the widow agreed to transfer to her children all of her right, title and interest in the real estate owned by the decedent. The children agreed to organize a new corporation, the petitioner, and to cause to be delivered to it all of their right, title and interest under the agreements. All of the transfers were made to petitioner "subject to all taxes and liabilities of the Estate of Arthur J. Collins of every nature" and it was "to pay all of said taxes and liabilities out of the assets * * *." Pursuant to the agreements, and in consideration for the transfers made by her, the widow received 1,000 shares of the $100 par value 6 per cent Cumulative Preferred Stock of petitioner, and 25 shares (25 percent) of its common stock. Each of her three children received 25 shares (25 percent) of its common stock. On October 2, 1933, the creditors of the Estate, who were now also creditors in the same amounts against the corporation, having waited since April 1930 without any substantial payments (their claims were $189,557.83 in *53 October 1933 as against $180,000 mentioned in the agreement of April 30, 1930), required the corporation to enter into a special agreement with them, to issue to them promissory notes, payable on demand, and to transfer to the Camden Safe Deposit & Trust Co., Camden, N. J., as Trustee, as security for the payment of the said notes, 598 of the 1186 shares of the Capital Stock of the Miami Beach Improvement Co., which was the principal stock which the corporation owned. Paragraph 3 of the Agreement provided that the trustee should hold the aforesaid stock as collateral security for the payment of the debts and obligations acknowledged in said Agreement and that the income and dividends of said stock should be used for the purpose of liquidating the said indebtedness. Paragraph 4 of the Agreement provides as follows: 4. The Corporation agrees that the aforesaid indebtedness of the said Creditors respectively, set forth on page 1 of this agreement, shall be completely liquidated within a period of three years from the date hereof and that interest on said indebtedness of said Creditors, respectively, set forth on page one of this agreement, including the amount due to said Charles Blum *54 Advertising Corporation as aforesaid, shall be paid in full within one year from the date hereof, and that twenty-five percent (25%) of the said indebtedness of the said Creditors, set forth on page 1 of this agreement, respectively, including the amount due to said Charles Blum Advertising Corporation as aforesaid, with interest thereon to the date of such payment, shall be paid within two years from the date hereof. In case of a default the Trustee had the power to sell the stock held as security. During the year 1936 petitioner's gross income amounted to $83,083.50, as follows: Dividends on 598 shares of
Miami Beach Improve-
ment Company stock,
pledged with trustee
$41,860.00
Dividends on 588 shares of
Miami Beach Improve-
ment Company stock, held
by petitioner
41,160.00
Dividends on other stock,
held by petitioner
63.50
$83,083.50
Petitioner paid $111,693.40 to its creditors in 1936. Of this amount $41,860 represents sums received as dividends on the stock pledged with the Camden Safe Deposit and Trust Company as Trustee, as set forth above. The remaining amount of $69,833.40 was paid from other funds of petitioner and from funds borrowed from the Burlington County *55 Trust Company in the amount of $40,000. On or before October 1, 1936, petitioner completely liquidated the indebtedness due, pursuant to the agreement of October 2, 1933. Petitioner is still in existence and has been operating continuously to date. Its balance sheets as of December 31, 1935 and December 31, 1936, as shown by its books, were as follows: - December
December
Assets
31, 1935
31, 1936
Cash
$1,929.44
$281.72
Notes Receivable
2,774.02
871.14
Accounts Receivable
6,760.37
5,000.00
Investments
Miami Beach Imp.
Co
1,201,560.32
1,201,560.32
Miscellaneous As-
sets
118,000.65
39,267.15
Total
$1,330,994.80
$1,246,980.33
Liabilities
Notes Payable
to Banks
$101,439.29
$40,000.00
to Others
791.20
.00
Due as Endorsers
6,074.73
.00
Due as Guarantor
35,000.00
35,000.00
Miscellaneous Pay-
ables
121.27
55.33
Capital Stock
Preferred
100,000.00
100,000.00
Common (No Par)
1,030,715.23
1,030,715.23
Surplus
56,853.08
41,209.77
Total
$1,330,994.80
$1,246,980.33
In computing petitioner's income tax liability for the year 1936 respondent allowed as a credit against its adjusted net income, for computing surtax on undistributed profits, the amount *56 of $41,860 for a contract restricting dividend payments. In determining that there is no personal holding company surtax for the year 1936 respondent allowed as a credit against petitioner's adjusted net income for computing such tax, as an amount used or set aside to retire debt, the sum of $62,230.49. [Opinion] Petitioner contends that by the use of its 1936 net income in 1936 to discharge debts required to be paid by it: (1) by the terms of the agreement of the incorporators made April 30, 1930, and (2) by the terms of the October 2, 1933 agreement, which irrevocably required payments to be made in 1936 in excess of its 1936 net income, it complied with the provisions of section 26 (c) (2) and thereby became entitled to full credit therefor as a payment under "Contracts Restricting Payment of Dividends" in the calculation of its surtax on undistributed profits for the year 1936. Petitioner argues that it is not the usual type of business corporation; that it was formed primarily to save and liquidate an estate; that all of its assets were furnished by the widow of Arthur J. Collins; that it was obligated to pay the debts and taxes of the Estate; that the Estate was incorporated *57 so that the earnings rather than the assets could be used to pay the debts and taxes; that the special agreement of October 2, 1933 was made so as to give a further opportunity to preserve the assets by the use of earnings; that all of the earnings of 1936 were used to pay the contract obligations and none were left from which a dividend could have been paid; and that it should have been allowed a credit of $74,767.19 (all of its net earnings for 1936) against its adjusted net income for computing surtax on undistributed profits, under the provisions of section 26 (c) (2) of the Revenue Act of 1936. [1]
*58 A detailed discussion of petitioner's argument would serve no useful purpose. Suffice it to say that while most of the statements set out above are true, petitioner is, nevertheless, not entitled to a credit in excess of that allowed by the respondent. As the Supreme Court pointed out in , reversing (a case strongly relied upon by petitioner), there are certain conditions precedent which must exist before a corporation is entitled to the relief from tax on undistributed profits granted by section 26 (c) (2). These conditions are: (1) there must be a written contract executed by the corporation prior to May 1, 1936; (2) the contract must contain a provision expressly dealing with the disposition of earnings and profits of the taxable year; and, (3) the contract must contain a provision requiring that a portion of such earnings and profits either: (a) be paid within the taxable year in discharge of a debt; or (b) be irrevocably set aside within the taxable year for the discharge of a debt; "A taxpayer whose *59 contract satisfies each of these three requirements is entitled to a credit to the extent of the amount which has been so paid or irrevocably set aside." The only contract entered into by petitioner prior to May 1, 1936, which contained a provision expressly dealing with the disposition of earnings and profits of the taxable year 1936 was the contract of October 2, 1933, between petitioner and certain of its creditors and the Camden Safe Deposit and Trust Company as trustee. This contract contained a provision which required petitioner to apply the income from certain stock deposited with the trustee to the payment of its indebtedness. The income from this stock amounted to $41,860, in the year 1936 and the respondent has allowed this amount as a credit in conformity with section 26 (c) (2). Petitioner's claim to a larger credit is based upon the provisions of the contract of October 2, 1933, which required it to liquidate completely its indebtedness to its creditors on or before October 2, 1936, and the fact that in satisfying this obligation it used all of its 1936 earnings. The contractual provision *60 relied upon was not, however, one "which expressly deals with the disposition of earnings and profits of the taxable year." It required a payment irrespective of earnings and profits. Under such circumstances, the fact that petitioner satisfied this obligation in part from earnings and profits of 1936 does not entitle it to a greater credit than was allowed by respondent. "A contract which requires a payment irrespective of earnings and profits cannot be said to deal expressly with the disposition of earnings and profits of the taxable year." . Moreover, the fact relied upon by the petitioner that the parties may have intended to use the corporate earnings to liquidate the indebtedness within the three year period does not help the petitioner where such intent is not expressly stated in the contract. In this connection, the following statement made by the Circuit Court of Appeals for the Eighth Circuit in , is pertinent: * * * The parties may have expected (although there is no evidence as to this) that the corporate earnings *61 in the taxable year or accumulated from prior years would be the source of 2 percent payment. However, it is clear under the terms of the contract that the payment on June 1st of each year had to be made even if there were no earnings in the first six months or during the full twelve months of the taxable year. Since the duty to make payment did not depend upon the presence of earnings in the taxable year it cannot be said that the contract even impliedly deals with the disposition of earnings and profits of the taxable year. In the instant proceeding the parties may have expected that all of the 1936 earnings and profits of petitioner would be used to retire the indebtedness. However that may be they particularly designated only certain portions of the earnings and profits for this purpose. Their failure to label the remaining earnings and profits in a similar manner indicates that as to such income they did not wish to be bound. By allocating only a portion of its annual income to the retirement of the indebtedness, which amount was not sufficient to retire it, it is evident that petitioner contemplated raising the necessary money either by the sale of certain of its assets or, *62 as was actually done, by borrowing on them. Petitioner's argument that it was organized to pay debts, taxes and claims of an estate and for this reason it should have credit for its entire income applied against its obligations is not sound. The agreement of April 30, 1930, to incorporate indicates that petitioner was formed for the purpose of continuing the business of Arthur J. Collins & Sons, Inc. The certificate of Incorporation discloses that it has the usual powers and purposes of a general business corporation in New Jersey. Even though the indebtedness in question was completely liquidated on or before October 1, 1936, the petitioner is still in existence and has been continuously operating to date. While it was obligated to "pay all of void taxes and liabilities (of the estate) out of the assets" transferred to it at the time of its incorporation, this was not a provision expressly dealing with the disposition of earnings and profits of the taxable year, and did not require that a portion of such earnings or profits be paid in discharge of a debt or be set aside for the discharge of a debt, as required by section 26 (c) (2), supra. Petitioner's query as to why full *63 credit is allowed under section 351 (b) (2) (B) [2] while only partial credit allowed under section 26 (c) (2) may be answered briefly. (A credit of $62,230.49 was allowed by respondent under the first-mentioned section in computing petitioner's surtax as a personal holding company while only $41,860 has been allowed under section 26 (c) (2).) Section 351 (b) (2) (B) first appeared in the Revenue Act of 1934 and was reenacted and carried forward into the Revenue Act of 1936. Section 26 of the Revenue Act of 1936 has no prototype in the earlier acts but was enacted for the specific purpose of granting relief, from the surtax upon undistributed profits, to corporations generally. Each is a relief provision, complete within itself, and each must be construed precisely as written. Congress in its wisdom has seen fit to exclude from the undistributed adjusted net income of a personal holding company amounts used or set aside to retire indebtedness incurred prior to January 1, 1934. The source of the payment is immaterial and the amount is not limited to payments out of current income. ; . *64 The credit under section 26 (c) (2) on the other hand is limited as pointed out above. ;
Respondent correctly limited petitioner's credit under section 26 (c) (2) to $41,860. It follows that the deficiency determined by him must be, and it is, approved. Judgment will be entered for the respondent. Footnotes
1. SEC. 26. CREDITS OF CORPORATIONS In the cases of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax - * * * *
(c) Contracts Restricting Payment of Dividends. - * * * *
(2) Disposition of Profits of Taxable Year. ↩ - An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.
2. SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES * * * * *
(b) Definitions. - As used in this title - * * * * *
(2) The term "undistributed adjusted net income" means the adjusted net income minus the sum of: * * *
(B) Amounts used or set aside to retire indebtedness incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness; and * * *.↩